UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

KYLE GULITZ,

                           Plaintiff,

           -against-

ERIC DiBARTOLO, individually, LINDA
McMAHON, individually, DONALD
CURRY, individually, JEFFREY
BISCHOFF, individually, PAUL
HOLOPETER, individually, LINDA
COOPER, individually, and the
TOWN OF YORKTOWN, New York,

                     Defendants.

------------------------------------------------------------x

08 Civ.

**COMPLAINT**

**BRIEANT**

**Jury Trial Demanded**

Plaintiff KYLE GULITZ, by his attorneys Lovett & Gould, LLP, for his complaint respectfully states:

### NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately resulting from actions taken by the Defendants while acting in concert under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed by 42 U.S.C. §§1981, 1983, and 42 U.S.C. §2000e *et. seq.*

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343. With regard to Plaintiff's Title VII claim on July 23, 2007, he duly filed a Charge of Discrimination (Charge #520-2007-03824) with the United States Equal Employment Opportunity Commission. On January 10, 2008, the United States Department of Justice duly issued to Plaintiff a Notice of Right to Sue. Plaintiff's state law claims are interposed in accordance with the Court's supplemental jurisdiction, 28 U.S.C. §1367.

## THE PARTIES

3. Plaintiff KYLE GULITZ is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. His father is Jewish and Plaintiff is of Jewish heritage. At all times relevant to this complaint Plaintiff was employed as a "Laborer" by the Defendant Town of Yorktown (hereinafter alternatively the "Town") on a full time basis commencing on August 16, 2005.

4. Defendant ERIC DiBARTOLO (hereinafter "DiBartolo"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly elected Superintendent of Highways for the Town.

5. Defendant LINDA McMAHON (hereinafter "McMahon"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was the duly appointed Personnel Officer for the Town. As such she has responsibility for investigating and stopping workplace discrimination such as that referenced *infra*.

2

6. Defendant DONALD CURRY (hereinafter "Curry"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Town in its Highway Department (hereinafter the "Department").

7. Defendant JEFFREY BISCHOFF (hereinafter "Bischoff"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Town in the Department.

8. Defendant PAUL HOLOPETER (hereinafter "Holopeter"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Town in the Department.

9. Defendant LINDA COOPER (hereinafter "Cooper"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was the duly elected Supervisor of the Defendant TOWN OF YORKTOWN, New York. The Town is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.


## THE FACTS

10. Following Plaintiff's full time appointment as a Town employee members of the Highway Department learned, through DiBartolo, that he is Jewish as a consequence of which they commenced a continuous barrage of anti-Semitic slurs and conduct intended to degrade and humiliate Plaintiff by reason of his race/religion. In that connection:

> a. On March 26, 2007, Bischoff brought a swastika into the Department's workplace,

b. On that date Curry wore the swastika in the workplace as provided by Bischoff and gave a simulated Nazi salute, accompanied with a "Sieg Heil" to the Department's general foreman,

c. Curry, who is not Jewish, routinely carries a dreadle, and has repeatedly displayed it to Plaintiff and played with it in front of Plaintiff, mocking him,

d. Following a March 23, 2007, incident in which Bischoff threatened to kill Plaintiff in the workplace and loudly announced to multiple witnesses that he did not want to "work with the fucking Jew", Curry began greeting Plaintiff with the play-on-words "SeeKyle", accompanied by a Nazi salute - - following which DiBartolo imposed retaliatory disciplinary action on Plaintiff, which action was thereafter ratified in writing by the Town Supervisor,

e. DiBartolo regularly ridiculed Plaintiff, on occasions when he had not shaven, advising him that he looked like "one of those Hasidims" with "tassels, Hasidims, dreds",

f. Co-worker John Jay, after witnessing numerous anti-Semitic comments directed at Plaintiff in the workplace, told Plaintiff: "Shut up, Jew",

g. DiBartolo, Curry, Bischoff, and amongst others Holopeter posted and/or knowingly countenanced the posting on Plaintiff's workplace locker: crude drawings depicting Plaintiff holding a pitchfork the prongs of which were calculated to resemble a Menorah; an advertisement for "Jews in Jeans"; a publication The Chronicals of Captain Kosher, and

*inter alia* a <u>Pennysaver</u> advertisement pertaining to the Reform Temple of Putnam Valley announcing "Shabbat Across America",

h. A co-worker (Brad Shephard) directed Plaintiff's attention to postings in the department's vehicle "barn", advising "look what your friend left for you". The postings depicted Plaintiff next to a Star of David and a Menorah uttering "oi",

i. DiBartolo, Curry, Bischoff and Holopeter encouraged a mentally challenged laborer in the Department to repeatedly greet Plaintiff with Nazi salutes and the salutation: "SeeKyle".

11. During the course of 2006 and 2007 Plaintiff repeatedly complained to DiBartolo about his (DiBartolo's) and Plaintiff's co-workers anti-Semitic conduct, only to have DiBartolo address the entire work crew, advising them that their conduct made Plaintiff "angry". As a consequence the incidents of anti-semitic smears and comments continued unabated and Plaintiff was intentionally ostracized and treated like a departmental pariah by his co-workers.

12. By reason of DiBartolo's refusal to take effective remedial action Plaintiff reported the systemic anti-semitic and race motivated conduct to McMahon who: repeatedly professed an inability and/or unwillingness to take remedial action and in fact did nothing whatsoever about that conduct. McMahon's refusal to put an end to that conduct condoned it, ratified it, and encouraged, permitted and/or facilitated the on-going racial slurs and conduct.

13. By reason of McMahon's refusal to take effective remedial action, Plaintiff reported the systemic and on-going race and religious discriminatory conduct directly to

Cooper, including reference to the swastika and the death threat. Cooper like McMahon refused to put an end to that conduct, thereby condoning it, ratifying it, encouraging it, permitting and/or facilitating it.

14. Under the circumstances Plaintiff filed a charge of discrimination with EEOC on July 23, 2007.

15. On that same date Plaintiff's counsel advised DiBartolo and McMahon by fax that Plaintiff had made the EEOC filing and intended to sue them individually along with the Town and certain subordinate members of the Highway Department for violations of Title VII, 42 U.S.C. §1981 and 42 U.S.C. §1983.

16. Upon receipt of that fax DiBartolo read it aloud to the Department's crew, joking about it – with the intent to incite more anti-semitic conduct to be directed at Plaintiff.

17. DiBartolo's animus towards Plaintiff was not only motivated by reason of Plaintiff's Judaic lineage and/or race, but also by reason of DiBartolo's having "caught" Plaintiff compiling photographic evidence of systemic corruption and theft in the department including, *inter alia:*

      A. Holopeter's personal use of Highway Truck #2 for shopping retrieving laundry and transporting for personal use building materials,

      B. DiBartolo's use of Town employees, on town time, to perform construction work in his personal residence,

      C. DiBartolo's giving away to non-town employees, without authority or permission, Town uniforms,

      D. DiBartolo's having personally owned vehicles, including that of a

Town Councilman, repaired at the Highway Garage using Town

equipment, personnel and supplies on Town time,

E.  DiBartolo's having a Town welder repair a Kumatsu excavator on

Town time – although the excavator is not Town owned,

F.  DiBartolo's use of Town employees (Bischoff, Holopeter and others),

on Town time, to perform work in connection with his (DiBartolo's)

private lawn maintenance business,

G.  DiBartolo's use of Town employees to pave the area in front of the

Yorktown Fire House,

H.  DiBartolo's assignment of tree crew members to cut down a tree that

was forty feet off the highway right-of-way and situated on the private

property of the Fire Chief, and *inter alia*,

I.  DiBartolo's assignment of tree crew members to cut down an elm tree

in front of the Zupa residence, even though the tree was twenty feet

away from the highway right-of-way and on private property.

18.  By reason of Plaintiff's opposition to the Department's race based and anti-

semitic conduct and/or his expressive conduct with respect to departmental corruption:

DiBartolo and/or the Town skipped him for a promotion to the position of "Driver" in

2007, thereby denying Plaintiff an annual initial salary increment of $10,000; DiBartolo

forced Plaintiff to work alone, rendering his work conditions dangerous with resulting

physical injury; DiBartolo assigned Plaintiff to monitor license plates at a Town dump —

menial and degrading work intended to embarrass him; DiBartolo threatened to bring

Plaintiff up on disciplinary charges in the event that Plaintiff pursued his claims of

race/religious discrimination; and *inter alia* DiBartolo transferred Plaintiff to the Town's Parks Department with the objective, actually realized, that a supervisor in the Parks Department who is related to DiBartolo would constantly harass and degrade Plaintiff – shouting at him, demeaning him in front of co-workers, and otherwise making the Parks Department workplace hostile specifically because of Plaintiff's opposition to race-based, anti-semitic conduct in the Highway Department and his expressive conduct in connection with his investigation of Highway Department systemic corruption.

19.  As a result of Defendants' conduct Plaintiff has been caused: pecuniary losses; physical injuries; impairment of his career path; public humiliation; public embarrassment, public degradation; anxiety; emotional upset; and he has otherwise been rendered sick and sore.

## AS AND FOR A FIRST CLAIM
## AGAINST ALL DEFENDANTS

20.    Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "19", inclusive.

21.    Under the premises Defendants race-based discriminatory conduct violated Plaintiff's rights as guaranteed by 42 U.S.C. §1981.

## AS AND FOR A SECOND CLAIM
## AGAINST ALL DEFENDANTS

22.  Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "19, inclusive.

23.     At no time have Plaintiff's gentile co-workers, who otherwise are identically situated to Plaintiff, been subjected to religious slurs.

24.     Under the premises Defendants' conduct violated Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM
## AGAINST DiBARTOLO

25.     Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "19", inclusive.

26.     Under the premises Defendant violated Plaintiff's rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A FOURTH CLAIM
## AGAINST THE TOWN

27.     Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "19", inclusive.

28.     Under the premises Defendant violated Plaintiff's rights as guaranteed by Title VII, 42 U.S.C. §2000e et seq.

## AS AND FOR A FIFTH CLAIM
## AGAINST ALL DEFENDANTS

29.     Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "19", inclusive.

30.    Under the premises the Town, as Plaintiff's employer, and the individually named Defendants as aiders and abettors, violated Plaintiff's rights as guaranteed by Section 296 et seq. of the New York State Executive Law.

WHEREFORE, a judgment is demanded:

A.  Awarding as against the individually named Defendants on the First, Second and Third Claims such punitive damages as the jury may impose;

B.  Awarding against all Defendants on all claims such compensatory damages as the jury may determine;

C.  Awarding against all Defendants on the First, Second, Third and Fourth Claims reasonable attorney's fees, and costs, and

D.  Granting such other and further relief as to the Court seems just and proper.

Dated:  White Plains, New York
        March 7, 2008

LOVETT & GOULD, LLP
by: _____
Jonathan Lovett (4854
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, New York 10605
(914) 428-8401